IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSEPH PATRICK JONES, #27203-078 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv289 |
| | | CRIM NO. 6:17cr00049 |
| UNITED STATES OF AMERICA | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

Movant Joseph Patrick Jones, a federal prisoner, brings this motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, (Dkt. #1). The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for disposition of the case. For reasons explained below, the Court recommends that Movant's section 2255 motion be denied and this case be dismissed, with prejudice.

**I. Procedural History and Factual Background**

On February 26, 2018, and after entering a guilty plea, Jones was sentenced to sixty months' imprisonment for one count of possession with the intent to distribute methamphetamine (count one) and sixty months' imprisonment for one count of the use, carrying and possession of a firearm during and in furtherance of a drug trafficking crime (count two), (Dkt. #36, 6:17cr00049). The Court ordered both counts to be served consecutively—for a total sentence of 120 months' imprisonment. *Id*. Jones did not file a direct appeal.

Jones filed this section 2255 motion in May 2020, (Dkt. #1). He subsequently filed a motion to modify the terms of his imprisonment, which United States District Judge J. Campbell Barker denied on March 4, 2021, (Dkt. #43, 6:17cv00049). Judge Barker also denied Jones's motion for compassionate release and motion to amend his sentence, (Dkt. ##49, 51).

**II. Jones's Section 2255 Claim**

Jones raises one claim in this proceeding arguing that "counsel was ineffective during the criminal proceedings by failing to file an appeal to the court of appeals for the Fifth Circuit as petitioner requested counsel to do so," (Dkt. #1, pg. 5). He also alleges the following:

> I had asked my lawyer to appeal for me before I was transferred back into State of Texas custody & was under the impression he had until I wrote to the courts, and their response was no one had filed an appeal on my behalf. On July 17[,] 2019 see memorandum.

*Id*. at pg. 5. In his attached memorandum, Jones asserts that "counsel was directed via letter and phone to file a notice of appeal," and that he was under the impression—"for nearly a year and a half"—that a decision on his appeal was pending, (Dkt. #1-1, pg. 5). Jones claims he contacted the "district court clerk's office," who responded on July 17, 2019 "confirming that there was no notice of appeal filed following entry of their judgment on February 28, 2018." *Id*. Based on this letter, Jones explains, he filed this section 2255 proceeding.

**III. The Government's Answer**

The undersigned ordered the Government to answer Jones's allegations. In its first response, (Dkt. #6), the Government argues that Jones's section 2255 proceeding is time-barred. It asserts that Jones was required to file such motion by March 13, 2019, yet waited until May 29, 2020. Jones filed a response to the Government's answer, (Dkt. #9), asserting that he did satisfy the timeliness requirements of 28 U.S.C. §2255(f)(4) because his trial attorney failed to file an appeal on his behalf. Jones insists that once he realized his attorney had failed to do so, he initiated this section 2255 proceeding. *See* 28 U.S.C. §2255(f)(4) (providing that a one-year period of limitation applies to a section 2255 motion, running from the latest of "the date on which the facts supporting the claims or claims presented could have been discovered through the exercise of due diligence.").

Following receipt of Jones's response, the undersigned ordered the Government to file a supplemental answer addressing this potential issue under *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The Government filed its supplemental answer in July 2021, along with an affidavit from Jones's trial counsel, Mr. Kenneth Hawk, (Dkt. ##14, 15). There, the Government maintained that Jones's section 2255 motion is untimely and that his contention that he could not discover the fact that his attorney did not file a direct appeal is unavailing. It further argued that if Jones's motion is timely, then an evidentiary hearing is required under *Tapp*.

**IV. Jones's Sentencing Hearing**

On February 26, 2018, United States District Judge Ron Clark presided over Jones's sentencing hearing. Jones, Mr. Hawk, and Assistant United States Attorney Ryan Locker were present for the hearing. After both Mr. Hawk and Mr. Locker explained to the Court that there were no objections to Jones's presentence report, Judge Clark began outlining the calculated guidelines:

> The Court: Then the record will reflect that I've read the Presentence Investigation Report. I conclude that the probation officer has properly calculated the guidelines with a total offense level of 21 and a criminal history category of 6.
>
> So, by statute in Count 1 that's 5 to 40 years and on Count 2, 5 years consecutive to the other counts; supervised release of 4 years to life on Count 1 and on Count 2, 0 to 5 years; a fine on Count 1 of up to $5 million on Count 2, up to $250,000; and a special assessment of $100 on each count.
>
> The guideline range on Count 1 is 77 to 96 months and on Count 2 is 60 months consecutive; supervised release, 4 to 5 years on Count 1 and 2 to 5 years on Count 2; a fine of 15,000 to $5 million; and again a special assessment of $100 on each count, for a total of $200.
>
> . . . .
>
> The Court: All right. Now, this is an 11(c)(1)(C) Plea agreement; and on Count 1 is an agreement for less than the guideline range. Keeping in mind,

3

|               | |
|---|---|
| | of course, that I've read all of the pleadings and papers on file, Mr. Locker, I would ask you to include in your statement an indication under the 3553 factors as to why the court should accept this limitation on its sentencing discretion; and then I'll hear a statement from Mr. Hawk and then a statement from Mr. Jones. |
| Mr. Locker: | Thank you, your Honor. The reason that the government extended this Plea Agreement to the defendant, which is some 27 to 36 months below—I'm sorry—17 to 36 months below the advisory guideline range as to Count 1, is primarily due to the nature of Count 2 and matters of proof related to should the government have insisted on that higher range, then there may have been some concerns about the imputation of that firearm to the defendant. |
| | . . . |
| | Furthermore, I believe 120 months' total sentence accurately reflects this defendant's culpability and brings him in line with other defendants within—although this is a single-defendant case, this is related to the 11-defendant case that is listed in the presentence report; and we believe that 120 months fits within the range based on relative culpability for those defendants as well. |
| The Court: | All right. Mr. Hawk, anything you would care to say? |
| Mr. Hawk: | . . . |
| | Last but not least, it is 120 months. It is a significant hit in the federal court system. So, we agree with Mr. Locker. This hard work of the government looking past that. It is the parties reaching agreement that accurately reflects the facts as they impute to this specific defendant. |
| | . . . |
| | I'll finish by asking the court—when he was arrested on this, the parole division went ahead and issued a warrant based on this conduct. I recognize he's only got another seven months. We'll ask the court to run this sentence, as an intention, concurrent with that one. |
| | . . . . |
| The Court: | All right. Mr. Jones, you are before the Court having pled guilty and been found guilty of possession with intent to distribute methamphetamine (actual)—that's Count 1—and on Count 2, use, |

4

> carrying, and possession of a firearm during and in furtherance of a drug trafficking crime.
>
> . . .
>
> Then I take a look at what is allowed by statute, 5 to 40 years on Count 1 and an additional 5 years on Count 2; and I compare that with the guideline range of 77 to 96 months on Count 1 and then 60 months consecutive on Count 2. Now, in this particular case, I also have to consider the 11(c)(1)(C) agreement which is below the guideline range.
>
> Now, part of that is obviously due to the work of your lawyer; but I don't hold the fact that your lawyer is doing his job against you. That's what he's supposed to do. And it's also partly the U.S. Attorney's recommendation; and since the Assistant United States Attorney has the complete file, which I don't, and should be familiar with every detail of the file, I usually give deference to the Assistant United States Attorney and these recommendations. And looking at the nature and circumstances of this offense, the amount of drugs involved, and where the weapon was and so forth, I find that that does, in fact, support the 11(c)(1)(C) agreement.
>
> . . .
>
> So, therefore, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Joseph Patrick Jones, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 120 months. This will consist of 60 months on Count 1 and 60 months on Count 2, and Count 2 will be consecutive to Count 1.

(Dkt. #38, case number 6:17cr049, sentencing hearing). At this point of the sentencing hearing, the parties began discussing the issue of an appeal. The hearing continued as follows:

> The Court:   All right. Mr. Jones, a defendant can appeal a sentence or, for that matter, his conviction if he believes that his plea of guilty was involuntary or unlawful or there was some fundamental defect in the proceedings that he didn't give up in his Plea Agreement.
>
> In your Plea Agreement you've given up many of your rights to appeal, and usually that is enforceable against you. But if you think that some point wasn't given up or some point is not enforceable, you may present that theory to the Court of Appeals. What you need to know is that in almost every case, if you are thinking of filing

|   |   |
|---|---|
| | some kind of appeal, you have to give notice of appeal within 14 days of me signing the judgment. Do you understand that, sir? |
| The Defendant: | Yes, sir. |
| The Court: | If you are not able to pay the cost of an appeal, you may apply to appeal without paying costs. If you make that request, I'll direct the Clerk of the Court to file that notice. Do you understand that? |
| The Defendant: | Yes, sir. |

*Id*.

**V. Mr. Hawk's Affidavit**

Mr. Hawk submitted an affidavit in this case addressing Jones's claim that he did not file a direct appeal as instructed. In his affidavit, (Dkt. #14, 620cv289, sealed), Mr. Hawk first states, "[f]rom the outset, I am stating unequivocally that at no time did PETITIONER, Joseph Patrick Jones, make any request of me to file Notice of Appeal or any sort of appeal on his behalf," (Dkt. #14, pg. 2). Mr. Hawk further explained that he and Jones spent "many hours parsing the facts of the case and isolating what criminal conduct he was responsible for both factually and legally." *Id*. He testifies that Jones "acknowledged to counsel and ultimately the Court that he possessed 15 grams of pure methamphetamine with intent to distribute it (not sell it)." Jones also admitted to Mr. Hawk and the Court that he was in possession of a .45 cal. Derringer firearm and in relation to a drug trafficking crime. *Id*. at pg. 3.

Moreover, Mr. Hawk explained that he advocated for Jones's position to the Government concerning the amount of the controlled substance for which Jones was factually and legally responsible for, ultimately persuading the Government. Accordingly, "the Government filed a 2 Count Information which reduced the mandatory minimum on the drug count from 120 months to 60 months and also included the 18 USC 924(c) weapons count." *Id*. Ultimately, the parties entered

into a binding plea agreement "for what amounted to a downward variance on the drug count and a guideline sentence on the weapons count." *Id*. Addressing the appeal issue, Mr. Hawk continues:

> All of the above is offered to explain and illustrate the myriad of factual and legal circumstances that would have made a decision to appeal at the time of sentence an extraordinarily bad idea because the outcome of PETITIONER's case was far better than the outcome he faced had he been convicted on the original Indictment and also more favorable than that contemplated by the Sentencing Guidelines for the conduct alleged in the Information to which PETITIONER Jones admitted and plead[ed] guilty to.
>
> Said another way, this is not a case in which the PETITIONER's actual outcome was far worse than any other possible outcomes. In such cases, it may be understandable that a PETITIONER may be unhappy to the extent he or she would ask their counsel to file Notice of Appeal. This was quite the opposite. The PETITIONER's outcome was significantly better than it could have been (would have been) and no doubt far better than it would be if the case were to be relitigated. The facts and circumstances support the proposition that the undersigned's assertion is true: Notice of Appeal was never entertained and never sought by the PETITIONER.
>
> . . .
>
> At no time has PETITIONER Jones ever asked me to file Notice of Appeal and any allegation to the contrary is false.

*Id*. at pg. 5-6.

**VI. Evidentiary Hearing under *Tapp***

The Court then ordered an evidentiary hearing, and attorney Charles Van Cleef was appointed to represent Jones on this sole *Tapp* issue, (Dkt. #19). The evidentiary hearing was conducted on this sole issue before the undersigned on October 21, 2021. The pertinent parts are outlined and summarized below.

A. Jones's Testimony

During the hearing, Jones testified on direct examination that he was convicted in 2018 and was represented during his criminal proceedings by Ken Hawk. When asked if at any point in time prior to the plea he articulated to Mr. Hawk that he was unhappy, Jones responded that he asked Mr. Hawk about his plea and was informed it was a 120 months' binding plea. Jones testified that

7

he believed 120 months' imprisonment was all he was going to be sentenced to—but he instead was sentenced to 134 months' imprisonment. Jones further testified that, on the day of sentencing, he told Mr. Hawk that he wanted to appeal and that he was not happy.

Jones testified that he spoke to Mr. Hawk's secretary on four occasions, and believed that an appeal had been filed. Jones testified that directly after sentencing, he was in the Smith County Jail with no way to speak with Mr. Hawk. He could not call him—except for when he was in the Gregg County Jail where he began making calls to Mr. Hawk. Jones testified that he began calling Mr. Hawk the same day he arrived there, and spoke to his secretary that day. He testified that he made at least four calls—and left a message that he wanted to appeal. Mr. Hawk's secretary told him that it had been taken care of and that she relayed his message about wanting to appeal. Jones testified that he felt he was getting the "run-around." Jones testified that the judge explained to him that he had 14 days in which to file an appeal, so he "made sure" to contact Mr. Hawk—and all calls made to Mr. Hawk occurred within those 14 days after sentencing. Jones again testified that he was told it had "been taken care of," but that he received no contact from Mr. Hawk. Jones testified that he still desires to appeal.

On cross-examination, the Assistant United States Attorney asked Jones about his sentencing hearing before United States District Judge Ron Clark. Jones acknowledged that Judge Clark read 60 months and 60 months at sentencing, which must be served consecutively. When asked if he was then sentenced to 120 months' imprisonment, Jones responded "yes." Jones testified that another inmate at the jail told him that he had just been sentenced and it should have been concurrent rather than consecutive. Then he began calling Mr. Hawk, leaving over four messages.

When asked if Mr. Hawk performed diligently, Jones responded "for the most part." Jones testified that Mr. Hawk explained that the sentence was 120 months flat pursuant to a binding plea agreement, but that he was not "a priority" for Mr. Hawk. He testified that he asked for appeal and Mr. Hawk "didn't do it."

### B. Mr. Hawk's Testimony

Next, Mr. Ken Hawk testified that his affidavit in this case is true and correct, adding that he has a habit of notetaking to supplement his memory and always has notes and documents. He stated that Jones sought a concurrent sentence, but the Government was not "on board." He testified that they had covered the issue of concurrent versus consecutive sentences. Mr. Hawk testified that he and Jones spent hours parsing through evidence, as the factual basis was important. Mr. Hawk testified that Jones knew every single fact and possibility.

Moreover, Mr. Hawk stated that he has one assistant to who receives phone calls. The assistant lets the attorney know immediately if the word "appeal" is uttered, as Mr. Hawk testified that they have a "strict protocol" about appeals—further testifying that this protocol is "essential and strict." When "appeal" is mentioned, "it is a big bell" and is "we know it's important." When asked if there was any possibility that multiple requests from Jones—or even a family member—for an appeal went ignored, Mr. Hawk responded that it was not remotely possible, and that the office keeps records of messages. In fact, Mr. Hawk testified that when his office filed notices of appeal, they have the Defendant sign the notice as a standard practice. Mr. Hawk further explained that it does not matter whether the appeal has merit or not—and that, while the he keeps records of voicemails, there is no record of contact with Jones from the date of sentencing until he filed this section 2255 proceeding, further remarking "I can tell you from the time we left the courtroom to the time we got the 2255, I was aware of no such contact—direct or indirect." Based on the way

9

the office operates, Mr. Hawk testified that while all things are possible, it is not remotely conceivable that multiple requests to file an appeal would go ignored.

On cross-examination, Mr. Hawk testified that the office does not accept collect calls. All calls from the jail are unsecure, so they do not speak. When asked about how calls are handled around the time of sentencing, Mr. Hawk responded that it would be often verbal—but that he has "specific recollection" that he was not told that Jones wanted to appeal. Mr. Hawk explained that the issue of sentencing was discussed during the plea negotiations, rendering there no reasonable way that Jones's sentence could have been a surprise to him. He further testified that Jones did not react at the sentencing hearing. The resulting sentence was predictable.

## VII. Legal Standards

Section 2255 is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). Section 2255 "provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is subject to collateral attack." *U.S. v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1999) (citing *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994)).

Cognizable claims within a section 2255 motion are narrow; the movant may not present a generalized, broad attack challenging the legality of his or her conviction and, importantly, non-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in section 2255 proceedings—absent a showing of cause for the procedural default and actual prejudice ensuing from the error. *United States v. Shaid*, 936 F.2d 228, 232 (5th Cir. 1991); *see also Villasenor-Cruz v. United States*, 2017 WL 6627045 (E.D.Tex. Oct. 3, 2017) (same).

A defendant asserting that counsel was ineffective must demonstrate both deficient performance and ensuing prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1999). Conclusory allegations of ineffective assistance of counsel will not suffice. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel."); *see also United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007) (explaining that "generalized assertions about counsel's failure to file motions, to make objections, and to follow Demik's instructions" are not enough.).

In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016). To establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's alleged deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 773 (5th Cir. 2014). A "reasonable probability" is one that is sufficient to undermine the confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694.

**VIII. Discussion and Analysis**

Jones claims in this lawsuit that trial counsel, Mr. Ken Hawk, was constitutionally ineffective for his failure to file a notice of appeal after being instructed to do so.

In *United States v. Tapp*, the Fifth Circuit held that the failure to file a notice of an appeal when requested is *per se* ineffective assistance of counsel even if the movant/petitioner has waived his right to a direct appeal and collateral review. 491 F.3d 263, 266 (5th Cir. 2007). If the movant/petitioner is able to demonstrate—by a preponderance of the evidence—that he requested

an appeal, prejudice is then presumed, and the movant is able to file an untimely notice of appeal—regardless of whether he can identify any arguably meritorious grounds for appeal that would not be precluded by the appeal waiver. *Id.*; *see also United States v. Higgins*, 459 F. App'x 412, 413 (5th Cir. 2012) (unpublished) ("Instead, if the petitioner demonstrates by a preponderance of the evidence that he ordered counsel to file an appeal, prejudice will be presumed, and the petitioner will be able to file an out-of-time appeal.").

The movant need only show "that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Tapp*, 491 F.3d at 266. An evidentiary hearing is necessary when the record fails to conclusively show whether and when a movant requested counsel to file a notice of appeal. *See United States v. Hereford*, 242 F. App'x 251, 252 (5th Cir. 2007 (unpublished) ("The record in the instant case does not conclusively show whether Hereford requested that his counsel file an appeal. Therefore, in light of *Tapp*, an evidentiary hearing is necessary."); *Higgins*, 459 F. App'x at 413 (vacating and remanding for an evidentiary hearing, as "[t]he evidence does not show whether Higgins directed counsel to file a notice of appeal.").

Here, the Court has reviewed the pleadings, the testimony at the evidentiary hearing, Mr. Hawk's affidavit, and the records of Jones's criminal case. Based on the testimony at the hearing, the Court does not find Jones's assertion that he requested Mr. Hawk to file a notice of appeal credible. Jones has not shown, by a preponderance of the evidence, that he requested Mr. Hawk to file a notice of appeal.

The Court finds Mr. Hawk's testimony at the *Tapp* hearing credible. *See United States v. Giacomel*, 153 F.3d 257, 258 (5th Cir. 1998) (explaining that the Magistrate Judge may make credibility findings based on evidence presented at an evidentiary hearing in a section 2255 case). Here, while Jones insists that he called Mr. Hawk's office exactly four times—all within fourteen

days after sentencing—and left messages about wanting to file an appeal, Mr. Hawk testified that his office employs strict protocols when the word "appeal" is articulated. The office has strict instructions that when the word "appeal" is mentioned, the attorney is immediately notified.

Jones also testified that once he arrived at the Gregg County Jail, he began to call Mr. Hawk's office and "was told it was being taken care of," which led him to understand that an appeal had been filed. Yet he also insists that he was forced to call Mr. Hawk's office multiple times, had to leave messages, and was given the "run around." But if Jones was "told" that "it was being taken care of"—which, as he testified, meant to him that an appeal was filed—the question becomes why it was necessary for Jones to leave multiple messages, all within this fourteen-day span, and present to the Court that he was essentially being given the "run around." In other words, the Court does not find it credible that Jones was told that his appeal "had been taken care of," such that he operated with the understanding that one had been filed, while at the same time during this fourteen-day span also leaving four messages with Mr. Hawk's office leading him to believe he was "getting the run around."

While Jones insists that he left exactly four messages for Mr. Hawk with the secretary, Mr. Hawk testified that his office keeps a record of messages. Mr. Hawk further testified that there was no record of any contact from Jones from the day of sentencing until the filing of this lawsuit. Mr. Hawk testified that it was not remotely possible that Jones's multiple requests for an appeal were ignored, specifically adding that it is not "remotely conceivable." Furthermore, while Mr. Hawk explained that calls from the jail are unsecure and, thus, his office does not accept collect calls, Mr. Hawk testified that he has a specific recollection that he was not told to file an appeal on Jones's behalf.

The preponderance of the evidence in this case does not show that Mr. Hawk was instructed to file a notice of appeal on Jones's behalf but then failed to do so. Under *Tapp*, the burden is on Jones to show that Mr. Hawk was ineffective for failing to file a notice of appeal. 491 F.3d at 266. He has not shown that it is more probable than not that he asked Mr. Hawk to file an appeal. *See United States v. Israel*, 838 F. App'x 856, 867 (5th Cir 2020) (explaining that the "preponderance of the evidence" standard is the "more-probable-than-not" standard."). Accordingly, the Court recommends that Jones's claim that counsel was ineffective for failing to file a notice of appeal be dismissed, with prejudice, after an evidentiary hearing pursuant to *Tapp*.

## IX. Conclusion

Jones has not shown by the preponderance of the evidence that he asked his trial counsel, Mr. Hawk, to file a notice of appeal but that counsel failed to do so. Accordingly, he cannot satisfy either of the *Strickland* prongs and this section 2255 proceeding should be dismissed, with prejudice. Jones is not entitled to file an out-of-time appeal.

## X. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a section 2255 proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Jones has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the

14

petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Jones failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

It is recommended that the above-styled section 2255 motion be denied, the civil action be dismissed, with prejudice, and that Jones be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 23rd day of March, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE